## BYERS v. COMMISSIONER OF INTERNAL REVENUE.

## BYERS TRANSP. CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 14501, 14502.

United States Court of Appeals
Eighth Circuit.

Oct. 29, 1952.

Rehearing Denied Nov. 19, 1952.

James J. Waters, Kansas City, Mo. (Leo B. Parker and Parker & Knipmeyer, Kansas City, Mo., with him on the brief), for petitioners.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott and Louise Foster, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

Two petitions to review decisions of the Tax Court have been consolidated for hearing. One is on behalf of Byers Transportation Co., a trucking corporation, located at Kansas City, Missouri, and operating between there and other points in that State. The other is on behalf of Harry Byers, the president and the controlling stockholder of the corporation.

Income tax deficiencies against each petitioner are involved, the deficiencies as to both taxpayers being predicated upon the payment, during the years 1942 to 1946 inclusive, by the corporation, to a partnership consisting of Byers' daughter and son, of an excess of two cents per gallon over the market wholesale price, for gasoline used by the corporation in operating its trucks. Before the formation of the daughter-and-son partnership, the corporation had been buying its gasoline at wholesale price, from the same distributor who became the supplier of the partnership, and —as the Tax Court said—there was nothing in the evidence to indicate that it could

not thus have continued to obtain its gasoline or to persuade that it changed its practice in this respect for any reason other than stockholder family relationship, with attendant tax advantage.

The amount of gasoline purchased by the corporation from the partnership was in 1942 $36,714.92, in 1943 $58,572.62, in 1944 $72,807.88, and 1945 $69,970.85, and in 1946 $78,844.30.

The Tax Court held in substance that the two-cent excess thus paid to the daughter-and-son partnership was not required tax-wise, in the circumstances and relationships involved, to be recognized as income produced by the partnership [1] and expense incurred by the corporation, but was entitled to be viewed for tax purposes as constituting earnings of the corporation which had been allowed to be syphoned off, and as amounting against Byers, in his position of control, to a diversion of dividend funds from himself to his children, to the extent of his stock holding.[2]

Byers, as above stated, was the controlling stockholder of the corporation. A minor quantity of stock was held by his wife and by his nephew, and he later gave a similar amount to his daughter and to his son. He, however, had and at all times exercised complete control over the conduct of the business. What price the corporation was willing to pay for gasoline was a matter that was subject to his determination. The formation of a partnership by the daughter and the son to sell gasoline to the corporation was his idea. He looked after the drawing-up of a formal agreement of partnership between them and the executing of it by them. This he had done at a time when the daughter was 18 years old and the son 16, and just shortly before they both were leaving Kansas City to attend university in the fall of 1941.

The agreement recited that each of the two partners was contributing $500 in capital but as a matter of fact the testimony did not show that these sums were actually paid or that any capital funds ever were used or needed by the partnership in its supplying of gasoline to the corporation. For a considerable period of time after the partnership was formed, the distributor made delivery of the gasoline directly to the corporation's tank, just as before. The only difference in the handling of the matter was that the distributor billed the partnership instead of the corporation and the partnership in turn made charges against the corporation. All of the necessary book and paper work on behalf of the partnership was done by the corporation's bookkeeper.

In April 1943, shortly before the daughter was expected to graduate from university and return to Kansas City, Byers arranged for the partnership to lease a filling station located away from the corporation's place of business. A third party was hired to operate the station, on the basis that he was to have the right to stock and sell any automotive equipment he desired but that the partnership was to furnish the gasoline and receive all the revenue therefrom. From that time on the corporation's trucks mostly came to the filling station for their gasoline, but delivery of some gasoline by the distributor directly to the corporation's tank was still made. As a result of the opening and operating of the filling station, the partnership obtained some other gasoline customers but the corporation continued to constitute the principal source of its business.[3]

---

1. As referred to hereafter, the partnership came, during part of the period here involved, to have some other gasoline customers, and the Tax Court duly recognized that the revenue deriving from this extraneous business was of course income produced by the partnership and not income attributable to the corporation.

2. Thus, for the years that Byers held 80 per cent of the stock of the corporation, the Tax Court added 80 per cent of the amount of the two-cent excess to his income equivalently as received dividends.

3. For example, in 1946, the partnership did business with the general public in the amount of $14,700 and with the corporation in the amount of $78,900. The most business ever done with the public in any year was $20,800.

The Tax Court declared that such transacting of business as the partnership had been engaged in, up to the time of the opening of the filling station at least, had amounted realistically to nothing more than the making of bookkeeping entries. The corporation's bookkeeper, as previously stated, kept the necessary records for the partnership, and Byers drew the checks to pay the distributor, on a bank account opened in the partnership's name.

After the daughter's return to Kansas City in 1943, she "supervised the bookkeeping for the business and did some of it herself." She also took over the signing of the necessary checks, with Byers' authority to sign checks on behalf of the partnership being relinquished. The operating of the filling station was left to the third party, above referred to, under the right given him to handle automotive equipment. The daughter took a position as clerk in a drug store, which she held through most of 1944 and 1945, and thereafter she married. The son continued to be away from Kansas City during all of the time that is here involved, as a university student, with an intervening period of military service.

We think that the Tax Court was entitled to appraise the corporation's payment of this two cents more per gallon, to the daughter-and-son partnership, for the same gasoline which it theretofore had been buying at wholesale price from the distributor and which it was in a position to have continued doing, as amounting simply to a syphoning off of corporate earnings in stockholder family-relationship and to corporate tax-advantage, and as constituting on the part of Byers, in his position of control and to the extent of his stock holding, a diversion from himself to his children of dividend income—the funds having in the circumstances been equivalently so paid out by the corporation and equivalently so received by him.

■ To sustain the deficiency against the corporation, discussion of only one legal ground is sufficient. The Tax Court's refusal to recognize the two-cent payment as having diminished the corporation's earnings amounted to a rejection of this portion of the price paid for gasoline as a deduction for "ordinary and necessary expenses" in carrying on the business, under section 23(a)(1)(A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a)(1)(A). Clearly, it seems to us, the circumstances were possessed of sufficient logical probative force to support the inference that payment of the two-cent excess was made for family and not business reasons and that it was in the situation neither commercially natural nor commercially realistic. The test of any deduction made as ordinary and necessary expenses in carrying on a trade or business is its normalcy and soundness as business expenditure, in both nature and amount, by general commercial standards, in practical application to the specific situation. Cf. Deputy v. Du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 113, 114, 54 S.Ct. 8, 78 L.Ed. 212; Amtorg Trading Corp. v. Commissioner, 2 Cir., 65 F.2d 583, 586.

■ As to the deficiency against Byers, the circumstances also plainly seem to us to have sufficient logical probative force to support the view that the formation of the daughter-and-son partnership and the buying of gasoline from it at a two-cent excess over the corporation's previous source constituted a plan on Byers' part to divert earnings of the corporation from himself as major stockholder to his children as family members; that this syphoning off of corporate earnings, on each occasion that the excess was paid, amounted in the situation to dividend distributions at these various times; and that such payments therefore had the nature and effect of a receiving of dividend income by Byers, to the extent of his stock holding.

Viewing the making of the payments as equivalent to dividend distributions, from the inherent nature of the funds indicated by their use, and from the control involved, in the dealings and disbursements of which they were comprised, and as representing such a distribution at the time each payment was made, the situation then simply amounted to one where Byers on each such occasion was disposing of income to which he had an accrued current

right and which on its face therefore necessarily was taxable to him. But even if the situation had been one in which, by reason of some limitation or condition in the corporation's charter or otherwise, it might have been possible to argue that no accrued current right as stockholder to have received the funds during the taxable year ever existed, Byers' disposition of his power to have received such funds as dividends subsequently, through the effecting of a present payment of them to his daughter and son as gasoline price in the manner done, would still be capable of making their receipt by the children constitute the realization of income by him during the taxable year involved, as a matter of paternal satisfactions in the family relationship, under the principles of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

It may be added that in what we have said as to the sufficiency of the circumstances to support the findings and conclusions of the Tax Court, as above discussed, we have considered all the evidence contained in the record and the relationship thereof to the circumstances set out, as a whole. There is no basis for us to hold that the result reached by the Tax Court was erroneous.

The decision in each petitioner's case is affirmed.