RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0437-DG

BEN MARTIN                                                                      APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2018-CA-1260
SCOTT CIRCUIT COURT NO. 16-CI-00539

DURBIN WALLACE                                                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**AFFIRMING IN PART AND REVERSING IN PART**

The Kentucky Court of Appeals reversed and remanded the Scott Circuit Court's entry of summary judgment in favor of Officer Ben Martin of the Georgetown Police Department. Relying on *Martin v. O'Daniel*, 507 S.W.3d. 1 (Ky. 2016), the Court of Appeals concluded Officer Martin was not entitled to qualified official immunity on claims of malicious prosecution, abuse of process, and defamation per se levied against him by Durbin Wallace. We granted Officer Martin's motion for discretionary review. Having reviewed the record and the arguments of the parties, we agree Wallace did not adequately state a claim against Officer Martin for abuse of process and affirm the Court of Appeals' determination that the deficiency is fatal to Wallace's claim. We further agree Officer Martin was not entitled to qualified official immunity, but

nevertheless reverse based on Wallace's failure to meet his burden of proof to establish the elements of his remaining claims.

Wallace was a school bus driver in Scott County for several years. On August 27, 2015, Wallace ordered a five-year-old passenger who was causing a disturbance to move to the front of the bus. A short time later, the child began talking to and grabbing at another student. Wallace stopped the bus, forcibly picked the child up, and moved him several rows back to an empty seat. The event was recorded by security cameras mounted in the bus. The sound of the child's head striking the bus window and a faint cry can be heard on the recording. Wallace was suspended as a bus driver on September 2 pending an investigation into the incident.

Officer Martin, a police officer and school resource officer, was assigned to conduct the investigation. After conducting several interviews and reviewing the videotape with his supervisors and the Scott County Attorney, all agreed probable cause existed to charge Wallace with assault in the fourth degree. An arrest warrant was subsequently issued and signed by a judge of the Scott District Court. Wallace was arrested pursuant to the warrant. As a result of the arrest, Wallace was terminated from his job as a bus driver. At arraignment, the charge of assault in the fourth degree was amended to harassment (physical contact—no injury) and Wallace entered a plea of not guilty. The Scott County Attorney later sought to amend the charge back to assault in the fourth degree, but the motion was denied. The matter went to a jury trial on March 4, 2016, and Wallace was found not guilty.

2

Less than four months later, Wallace filed the instant suit against Officer Martin and Scott County Board of Education Superintendent Patricia Putty, alleging malicious prosecution, abuse of process, and defamation.[1] Following a period of discovery, Officer Martin moved for summary judgment based on qualified official immunity and, alternatively, failure of proof by Wallace of the elements of his claims including malice or a lack of probable cause. On July 18, 2018, over two years after the suit began, summary judgment was entered in favor of Officer Martin. In its order, the trial court concluded the arrest warrant sought by Officer Martin was valid and the actions he took to secure the warrant were discretionary, done in good faith, and accomplished in the course of his work as a police officer. It further found the record did not contain a scintilla of evidence of maliciousness or bad faith. Based on those circumstances, the trial court determined Officer Martin was entitled to qualified official immunity and entered summary judgment as a matter of law.

Wallace appealed and the Court of Appeals took a different view. Finding good faith and malice to be mutually exclusive, most intentional torts preclude acting in good faith, and relying on this Court's decision in *Martin*, the Court of Appeals concluded qualified official immunity did not shield police officers from malicious prosecution claims. If a plaintiff can prove an officer acted with malice, entitlement to immunity is destroyed; conversely, if the plaintiff cannot

---

[1] Officer Martin was sued in his individual capacity as a police officer, while Superintendent Putty was sued in her individual and official capacities. This opinion concerns only those claims levied against Officer Martin as no judgment has yet been entered regarding Superintendent Putty and she is not a party to this appeal.

show malice, immunity becomes unnecessary. Based on these conclusions, the Court of Appeals determined the trial court erred in granting Officer Martin summary judgment on Wallace's malicious prosecution claim. The Court of Appeals further held Wallace's defamation claim required proof of actual malice such that qualified official immunity was inapplicable under *Martin* and the trial court erred in not so finding. Finally, after reviewing Wallace's complaint, the Court of Appeals held Wallace had stated a claim for abuse of process against Superintendent Putty but had not made the same allegations against Officer Martin. Thus, it concluded the trial court correctly dismissed that claim. This Court granted discretionary review.

Before turning to the merits, we find it important to note the briefs filed by Officer Martin and Wallace each fail to comply with the mandates of CR[2] 76.12. Officer Martin includes no statement of preservation for any of his arguments, CR 76.12(4)(c)(v); includes minimal citations to the trial court record supportive of his statement of the case or arguments, CR 76.12(4)(c)(iv) and (v); and does not include a copy of the opinion of the Court of Appeals in the appendix, CR 76.12(4)(c)(vii). For his part, Wallace's brief contains not a single citation to the record. CR 76.12(4)(d)(iii). Wallace's deficiency before this Court is compounded by the fact he was chided by the Court of Appeals for the same deficiency in his brief filed with that court. Although we choose not to impose penalties based on these shortcomings, we take the opportunity to

---

[2] Kentucky Rules of Civil Procedure.

4

remind the parties and future litigants that failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance.

> It is a dangerous precedent to permit appellate advocates to ignore procedural rules. Procedural rules "do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated."

*Hallis v. Hallis,* 328 S.W.3d 694, 696 (Ky. App. 2010) (quoting *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Bischoff,* 248 S.W.3d 533, 536 (Ky. 2007)).

When a trial court grants a motion for summary judgment, the standard of review for an appellate court is de novo because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.,* 607 SW.3d 678, 681 (Ky. 2020). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.,* 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.,* 281 S.W.2d 914, 916 (Ky. 1955). "If the summary

judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

Here, the trial court based its grant of summary judgment on Officer Martin's entitlement to qualified official immunity. As the Court of Appeals correctly held, the trial court's decision on immunity was incorrect as a matter of law. Our decision in *Martin* plainly answered the question in the context of a claim of malicious prosecution against police officers but likewise covered other causes of action predicated on malice such as Wallace's claim of defamation per se.

> Acting with malice and acting in good faith are mutually exclusive. Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim. *Raine* [*v. Draisin*], 621 S.W.2d [895,] 899 [(Ky. 1981)]. But, it is also a fact that defeats the defendant's assertion of qualified official immunity. Official immunity is unavailable to public officers who acted "*with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . ." *Yanero* [*v. Davis*], 65 S.W.3d [510,] 523 [(Ky. 2001)] (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)[)].
>
> It thus becomes apparent that the very same evidence that establishes the eponymous element of a malicious prosecution action simultaneously negates the defense of official immunity. In simpler terms, if a plaintiff can prove that a police officer acted with malice, the officer has no immunity; if the plaintiff cannot prove malice, the officer needs no immunity.
>
> Therefore, in the context of a malicious prosecution claim against state law enforcement officers, the issue of qualified official immunity is superfluous. The same would also be true with respect to any cause of action predicated upon malice instead of negligence or some other basis of liability. We agree with the officers' assertion that qualified official immunity is not limited to negligence actions. But, while *absolute immunity* will prevail even against acts that are maliciously motivated, *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011),

6

> *qualified official immunity* yields to proof that a defendant's actions were malicious. Consequently, when a plaintiff must prove malice to sustain his cause of action, a defense of qualified official immunity has little meaning and no effect.

*Martin*, 507 S.W.3d at 5-6. Thus, on this authority, the trial court plainly erred in determining Officer Martin was entitled to the cloak of qualified official immunity. The Court of Appeals conducted a lengthy and thorough analysis on this point and reached the correct result. However, that is not the end of the inquiry in this matter.

Despite the trial court's incorrect finding regarding immunity, the record reveals an adequate legal basis for its ultimate decision to grant summary judgment and we "may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) (citation omitted). In fact, "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014) (citing *Fischer*, 197 S.W.3d at 103). The affirm-for-any-reason principle exists so that appellate courts may resolve issues on proper legal grounds and avoid perpetuation of erroneous legal reasoning. *Id.* (citing *Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 805 n.3 (Ky. 2010)). In other words, an appellate court need not reverse a lower court's judgment because the lower court reached the correct legal outcome on incorrect grounds.

Still, the affirm-for-any-reason principle must be considered and balanced with another seemingly contradictory principle of appellate review—party presentation of issues for judicial review. "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, [appellate courts] follow the principle of party presentation." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "Ordinarily, this Court confines itself rather closely to deciding only those issues which the parties present." *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991); *see also Greenlaw*, 554 U.S. at 243 ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). "We take the view that counsel and the courts below have sufficiently identified the issues; that we need not redefine the question in the last stage of the litigation." *Mitchell*, 816 S.W.2d at 185. Put differently, "[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties." *Greenlaw*, 554 U.S. at 244 (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in result of reh'g en banc)).

How do we square these seemingly inconsistent principles of appellate review? First, various principles of appellate review and judicial restraint guide this Court's consideration of issues on appeal. Generally, based on the principle of party presentation, this Court of last resort only considers issues presented by the parties. However, "we are constrained by no rule of court or constitutional provision to observe [party presentation], and on rare occasions,

8

the facts mandate a departure from the normal practice." *Mitchell*, 816 S.W.2d at 185. So party presentation is a discretionary principle of appellate review.

Second, party presentation is not always required to affirm for an alternative reason supported by the record. "When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law." *Id.*; *see also Mark D. Dean, PSC*, 286 S.W.3d at 496 ("While alternative grounds are frequently addressed because they have been raised by an appellee, . . . they are not required to be so raised." (citation omitted)). But to affirm for any reason supported by the record without party presentation, the facts must mandate a departure from the normal practice of party presentation and the alternative basis for affirmance must appear on the appellate record. We do not raise on our own motion and for the first time on appeal issues that were not considered in proceedings below or presented by the parties as an alternative basis for affirmance.[3]

Third, the principles of affirmance-for-any-reason-supported-by-the record and party presentation are not incongruous concepts. The present case presents a perfect example of how the principles work in tandem. In this case, the issues of malicious intent and the existence of probable cause appear in

---

[3] There are, or course, certain issues which may be raised *sua sponte* at any stage of the proceedings. *See Commonwealth Cab. for Health and Fam. Svcs., Dep't for Medicaid Svcs. v. Sexton ex rel.*, 566 S.W.3d 185, 192 (Ky. 2018) (constitutional standing); *Community Fin. Svcs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019) (applicable legal authority); *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. App. 2005) (subject matter jurisdiction).

9

the record on appeal because the Appellant raised the issue in his brief before this Court. As such, the trial court's grant of summary judgment is properly reinstated because the trial court's grant of summary judgment is supported on other grounds appearing in the appellate record.

> In an action for malicious prosecution, both malice on the part of the defendant and want of probable cause for his prosecution of the plaintiff must be alleged and proved, although malice may be inferred from proof of the absence of probable cause. The jury, however, may not invariably imply malice from the mere want of probable cause if all the facts disclosed lead to a different conclusion. If malice was to be inferred from want of probable cause alone, then there would be no necessity for having a distinct requirement that malice be proven, for want of probable cause would then be the only element necessary to be established.

*Mosier v. McFarland*, 269 Ky. 214, 106 S.W.2d 641, 642 (1937) (internal citations omitted). Malice "means seeking to achieve a purpose other than bringing an offender to justice" in criminal actions. *Martin*, 507 S.W.3d at 11. Here, Wallace has failed to show Officer Martin acted in any way inconsistent with his duties as a peace officer and has not pled any facts to suggest otherwise. The sole justification for his assertion of malice is that Officer Martin placed him under arrest rather than issuing a citation. Wallace believes this action was violative of the provisions of KRS[4] 431.005(1)(d) and KRS 431.015(2), thereby evincing malice and objective bad faith. His position is without merit.

KRS 431.005(1)(d) and KRS 431.015(2) govern when a police officer may make an arrest without a warrant for violations committed in his or her

---

[4] Kentucky Revised Statutes.

presence. Officer Martin indisputably was not present on Wallace's bus on August 27, 2015, thereby rendering KRS 431.005(1)(d) and KRS 431.015(2) inapplicable. Furthermore, Wallace was arrested pursuant to a warrant. "[W]here an arrest warrant has been issued for a suspect, that warrant will provide the arresting officer with all the valid probable cause needed to arrest that individual—and the officer will need nothing more." *Commonwealth v. Marshall*, 319 S.W.3d 352, 356 (Ky. 2010) (citing KRS 431.005(1)(a)). No challenge has been levied as to the arrest warrant's validity. This is likely because, as the record clearly reveals, a judge reviewed an application for the arrest warrant and approved its issuance. The trial court later concluded sufficient evidence was presented to overcome a motion for directed verdict and send the case to the jury. KRS 431.005(1)(a) specifically authorizes police officers to make an arrest "in obedience to a warrant." Officer Martin did just that. Wallace's dissatisfaction with his arrest is simply an insufficient basis upon which to base a finding of malice by Officer Martin.

Additionally, the record reveals no evidence of a lack of probable cause for Wallace's prosecution. While he was acquitted following a jury trial, a not guilty verdict is not tantamount to a finding of a lack of probable cause. "[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized[.]" *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (internal quotation marks and citations omitted). "'[P]robable cause just means a good reason to act, . . . it does not mean certainty, or even more

11

likely than not, that a crime has been committed or a medical emergency is ongoing.'" *Goben v. Commonwealth*, 503 S.W.3d 890, 913 (Ky. 2016) (quoting *Hanson v. Dane Cnty.*, 608 F.3d 335, 338 (7th Cir. 2010)). The record reveals Officer Martin received information regarding an incident, conducted an investigation, presented his findings to his supervisors and the prosecutor, and a charging decision was ultimately made. Not only was there a consensus by this group to find probable cause to charge Wallace with a crime, the trial court refused to grant a directed verdict and found sufficient evidence to permit the case to go to the jury. Wallace has failed to counter these immutable facts or otherwise demonstrate a lack of probable cause, instead directing us only to his unsupported allegations.

After two years of litigation, Wallace has not produced even a scintilla of evidence of malice nor of lack of probable cause for the underlying prosecution. The trial court acknowledged this failure in its summary judgment order, refusing to engage in speculation or supposition to save Wallace's claims. The failure of proof of malice and lack of probable cause is fatal to Wallace's claim of malicious prosecution. Similarly, because defamation per se requires a showing of malice, Wallace cannot prevail on that claim. Where a party "has no evidence to support an essential element" of the claim, summary judgment is proper. *Steelvest*, 807 S.W.2d at 481 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Allegations alone do not constitute sufficient affirmative evidence to defeat a properly supported motion for summary judgment. *See*

*Educ. Training Sys. Inc. v. Monroe Guar. Ins. Co.*, 129 S.W.3d 850, 853 (Ky. App. 2003) (pleadings are not evidence).

Although the trial court should have granted summary judgment based on the lack of genuine issue of material fact and Wallace's utter failure to come forward with sufficient evidence to support his allegations—without reaching the immunity question—its decision was nevertheless correct and thus must stand. *See Newman v. Newman*, 451 S.W.2d 417, 420 (Ky. 1970) (trial court's decision to grant summary judgment for an erroneous reason was proper on another ground and was therefore upheld). The Court of Appeals, like the trial court, erred in basing its decision on the immunity question. Therefore, reversal is warranted and reinstatement of summary judgment on Wallace's malicious prosecution and defamation claims is required.

Finally, as the Court of Appeals noted, Wallace failed to allege the elements of an abuse of process claim against Officer Martin. The only allegations set forth in his complaint regarding abuse of process related solely to Superintendent Putty. It is axiomatic a party must clearly allege facts and circumstances demonstrating each element to pursue a claim against another. Wallace did not. Based on this failure, the Court of Appeals correctly held the trial court's grant of summary judgment on the abuse of process claim as to Officer Martin was not erroneous. Thus, that portion of the decision of the Court of Appeals is affirmed.

For the foregoing reasons, the decision of the Court of Appeals is affirmed in part and reversed in part and the Scott Circuit Court is directed to enter summary judgment in favor of Officer Martin consistent with this Opinion.

All sitting. Minton, C.J.; Conley, Hughes, Keller, and Lambert, JJ., concur. VanMeter, J., concurs in result only.

COUNSEL FOR APPELLANT:

L. Scott Miller
Sturgill, Turner, Barker & Moloney, PLLC

COUNSEL FOR APPELLEE:

Edward E. Dove